# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **RILEY GOBERT** | * | **CIVIL ACTION NO. 05-1899** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Riley Gobert, born November 27, 1966, filed an application for supplemental security income payments on June 17, 2003, alleging disability as of May 30, 2003, due to left hand injury, nervousness, depression, and forgetfulness.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Consultative Examination by Dr. Michael Burnell dated August 20, 2003**. Claimant complained of persistent pain, difficulty grasping things, and limitation since sustaining a laceration to the left palm at age 12. (Tr. 108). He repeatedly requested Lortab during the interview.

On examination, claimant was morbidly obese. (Tr. 109). His blood pressure was 180/100. He had an exaggerated pain response when Dr. Burnell touched his left hand. He had full flexion and extension of the left hand.

Claimant had full range of motion of the left wrist, but displayed an exaggerated pain response with hyperextension. He was able to manipulate a pen in picking it up off of the floor with all fingers of his left hand in-between his thumb. His motor strength appeared to be 4/5; however, Dr. Burnell opined that he had "a very poor effort" and was "not entirely honest with the exam." Light touch sensation was preserved, and claimant denied any numbness to the distal digits.

Claimant appeared calm on examination. (Tr. 110). He displayed an appropriate affect. He appeared to function at an appropriate level of intelligence, and his memory recall also appeared appropriate.

Dr. Burnell's impression was a left hand injury which did not display any sensory or motor deficits; appropriate mental status, and no neurological deficits. He opined that claimant was not entirely compliant or honest with the examination. He noted that any nervousness, depression, or forgetfulness was not evident in the interview, nor was claimant's memory impaired. He opined that claimant was capable of some sort of employment.

**(2) Records from Dr. A. John Tassin dated June 25, 2001 to March 15, 2005**. On June 25, 2001, claimant complained of left hand and arm pain. (Tr. 117). He reported high blood pressure and falling asleep all of the time on November 10, 2004. (Tr. 116). On March 15, 2005, he complained of blood pressure problems and left hand pain. (Tr. 114).

**(3) Consultative Psychological Examination by Sandra Durdin, Ph.D., dated April 20, 2005**. Claimant reported that he did not have any mental problems. (Tr. 119). On examination, he was alert and oriented in all spheres. His pace was normal, and his attention and concentration were good. Speech and language were fully intelligible, and vocabulary was low average. He had a normal mood and affect. Memory was intact, and cognitive skills were adequate.

Claimant's estimated level of intellectual functioning was low average. His thought content and organization were intact. He had no perceptual distortions and no suicidal or homicidal ideations. Judgment was normal.

Administration of the WAIS III revealed a verbal IQ score of 77, performance score of 80, and full scale score of 77. Claimant's verbal skills were predominantly borderline, which Dr. Durdin thought was impacted by his very limited education. (Tr. 120). She found that his nonverbal skills were low average. His adaptive skills were commensurate with low average functioning. She noted that his main complaints were his hand and blood pressure.

Dr. Durdin's impression was learning disorder, NOS, and limited education. She found that claimant's ability to understand, remember, and carry out simple and detailed instructions was adequate if within the range of his educational capability. She determined that his ability to maintain attention to perform simple repetitive tasks for two-hour blocks of time was adequate. She also found that his ability to sustain effort and persist at a normal pace over the course of a 40-hour workweek was adequate from a mental perspective.

Additionally, Dr. Durdin found that claimant's ability to relate to others, including supervisors and co-workers, was good. She noted that he was very polite. She determined that his ability to tolerate the stress and pressure associated with day-

4

to-day work activity and demands was adequate in the absence of any claims or presentation of a serious mental disorder. She found that he was capable of managing his own personal affairs.

In the Medical Source Statement of Ability to do Work-Related Activities (Mental), Dr. Durdin determined that claimant had slight limitations as to understanding, remembering, and carrying out detailed instructions. (Tr. 121). She found that no other capabilities were affected by his impairment. (Tr. 122).

**(4) Consultative Internal Medicine Examination by Dr. Anna Macasa dated April 23, 2005**. Claimant complained of uncontrolled hypertension which caused dizziness, left arm pain related to a fall while riding a bike, and weekly frontal headaches lasting for an hour. (Tr. 124). He could dress and feed himself; stand for 30 minutes at a time, and for a total of 2 hours out of 8; walk on level ground for a half block; sit for 2 hours, and lift no more than 30 pounds. He could drive, ascend and descend stairs, and cook. His medications included Vytorin, Hyzaar, Diovan/Hydrochlorothiazide, Bextra, Dicyclomine, Etodolac, Augmentin, and Mobic. (Tr. 125).

On examination, claimant was 67 3/4 inches tall and weighed 298 pounds. His blood pressure was 192/107. He was able to get on and off the exam table, up and out of the chair, and dress and undress.

Claimant's heart had normal rate, regular rhythm, and no murmurs, rubs, or gallops. He had normal ability to walk. His grip strength was 5/5 on both sides.

X-rays of the left radius ulna of the left wrist joints, left elbow joint, and left hand showed some bony overgrowth on the medial side of the superior radius, probably relating to an old fracture. (Tr. 126). Otherwise, there were no new fractures. Wrist and elbow joints were intact.

Dr. Macasa's impression was poorly controlled hypertension despite multiple agents for treatment, and a deformity of the left radius possibly related to an old fracture. Claimant claimed that this was causing him chronic pain, for which Dr. Macasa recommended continued use of Etodolac for pain relief. She determined that claimant's ability to sit, stand, walk, hear and speak, and handle objects was within normal limits.

In the Medical Source Statement, Dr. Macasa found that claimant could lift/carry 20 pounds occasionally and 10 pounds frequently. (Tr. 127). She determined that his ability to stand/walk and sit were not affected by his impairment, but then checked that he could stand/walk and sit for about 2 hours. (Tr. 128). She indicated that he could frequently perform all postural activities. He had no limitations as to physical functions or the environment. (Tr. 129).

**(5) Sleep Study Report dated June 1, 2005**. Claimant reported having nightly snoring, severe excessive daytime sleepiness, and falling asleep while driving a car on a daily basis. (Tr. 133). A sleep study revealed very severe sleep apnea/hypopnea syndrome with a critical apnea/hypopnea index, significant desaturations, and absent delta sleep. Dr. Stuart J. LeBas recommended therapeutic intervention.

**(6) Claimant's Administrative Hearing Testimony**. At the hearing on March 24, 2005, claimant was 38 years old. (Tr. 138). He testified that he was 5 feet 8 inches tall, and weighed about 300 pounds. He stated that he had gained about 10 pounds in the previous 6 months. (Tr. 139).

Claimant had attended school through the seventh grade in special education. (Tr. 140, 165). He reported that he could read a little bit, and could write his name pretty well. (Tr. 141). He stated that he could not write a note or remember too much arithmetic. Claimant said that he did not drive very much because his head started spinning due to his high blood pressure. (Tr. 142).

As to employment, claimant testified that he had last worked as a car washer at T & J Ford. (Tr. 143). He had also worked as a chicken stand for one day. Additionally, he had been a stocker at a grocery store, a cook at a restaurant, and a maintenance man at a casino. (Tr. 144, 146).

7

Claimant testified that he had stopped working because of problems with his hands and with high blood pressure. (Tr. 144, 147). He stated that he had hurt his hand when he was 12 years old while riding a bicycle, and that it had worsened when he began working at T & J Ford. (Tr. 145-46). He also complained of nerves, depression, forgetfulness, and dozing off during the day. (Tr. 147, 167).

Claimant reported that he had not taken blood pressure medication in the past because he could not afford it. (Tr. 149). He stated that he was taking it at the time of the hearing. (Tr. 150). He testified that he was also taking medication for pain, fluid, cholesterol, and acid reflux. (Tr. 151-53, 161).

Regarding restrictions, claimant testified that he could not lift anything heavy or grip with his left hand because of pain. (Tr. 155). He reported that he could walk about one block. (Tr. 162). He said that he could stand for about 15 minutes, and sit for about an hour. He stated that he could climb stairs and reach forward and overhead.

Additionally, claimant said that he could carry about eight pounds with his right hand and a paper cup with his left. (Tr. 163). He stated that he could stoop a little bit, kneel, and grip with his right hand. He reported that he could concentrate a little bit, and could follow simple one or two-step instructions. (Tr. 163-64). He also complained of forgetfulness after his mother died. (Tr. 156).

8

Claimant testified that he would have a problem with working around other people and with the public. (Tr. 164). He also stated that he would not be able to work within a timed deadline. He said that crowds bothered him sometimes. (Tr. 165). He also complained that he could not work around smoke, dust, heat, or cold.

As to activities, claimant testified that he walked around the house, but then his head would start spinning. (Tr. 156-57). He stated that he did not watch that much television, and listed to the radio a little bit. (Tr. 157). He reported that he went shopping when he got money, which was not very often. (Tr. 157-58). He said that he visited with a friend about once a month, and that his brother visited him about every two weeks. (Tr. 158-59).

Additionally, claimant testified that he went to church about once a month. (Tr. 159). He stated that he picked up the paper sometimes, and helped with the laundry about every two months. He said that he was able to make sandwiches and take care of his personal needs. (Tr. 159-60).

**(7) The ALJ's Findings are Entitled to Deference**. Claimant did not specify the errors committed at the administrative level which would entitle him to relief as directed in the Scheduling Order. However, he apparently argues that the ALJ "completely ignored the medical and lay evidence pointing to the disability." (rec. doc. 14, p. 13). For the following reasons, the undersigned finds that the ALJ's

decision is supported by substantial evidence and should be affirmed.

The record reflects that the ALJ specifically evaluated all of claimant's impairments including left hand injury, nervousness, depression, forgetfulness, sleep apnea, learning disability and obesity. (Tr. 21-24). Based on the medical evidence, the ALJ concluded that claimant had severe impairments of a learning disorder, hypertension, obesity, and a left hand injury, but that none of these met or equaled the criteria for any impairment listed in Appendix 1. (Tr. 24).

As to claimant's physical impairments, the ALJ relied on the opinions of Dr. Burnell and Dr. Macasa. She cited Dr. Burnell's finding that claimant had exaggerated pain response when he touched claimant's left hand. (Tr. 24-25, 110). The ALJ further referred to Dr. Burnell's opinion that claimant had a "very poor effort" on motor strength examination. (Tr. 109). Additionally, the ALJ noted Dr. Burnell's statement that any nervousness, depression, or forgetfulness was not evident, nor did claimant appear to have any neurological deficits. It is well established that the ALJ's assessment as to claimant's credibility is entitled to great deference. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

Additionally, the ALJ cited Dr. Macasa's findings that claimant's grip strength was 5/5 on both sides, and that his ability to sit, stand, walk, hear, speak, and handle objects was within normal limits. (Tr. 25, 125-26). While the ALJ noted some

inconsistencies between Dr. Macasa's written opinion and the medical source statement, the ALJ decided to give greater weight to the written opinion. (Tr. 25). It is well established that conflicts in the evidence are for the Commissioner and not the courts to resolve. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Thus, this finding is entitled to deference.

Regarding claimant's mental condition, the ALJ relied on the opinion of Dr. Durdin, who found that claimant's ability to understand, remember, and carry out simple and detailed instructions was adequate within the range of his educational capability. (Tr. 25-26, 120). Dr. Durdin also determined that his ability to maintain attention to perform simple repetitive tasks for two-hour blocks of time was adequate. She further found that his ability to sustain effort and persist at a normal pace over the course of a 40-hour workweek was adequate from a mental perspective. Additionally, she determined that claimant's ability to relate to others, including supervisors and co-workers, was good. Finally, she opined that his ability to tolerate the stress and pressure associated with day-to-day work activity and demands was adequate in the absence of any claims or presentation of a serious mental disorder. As the ALJ's finding that claimant's alleged mental impairment was not disabling is supported by the evidence, it is entitled to deference.

In summary, the record reflects that claimant's alleged impairments were not disabling. Dr. Burnell opined that claimant was "capable of some sort of employment" based on his physical examination. (Tr. 110). Dr. Durdin also determined that claimant's ability to understand, remember, and carry out simple and detailed directions, to maintain attention, persistence and pace, to relate to others, and to tolerate the stress and pressure associated with work was adequate. (Tr. 120). Based on the medical records, the ALJ found that claimant's non-exertional limitations had no significant adverse effect on the light job base. (Tr. 27). As the ALJ's findings are supported by the evidence, they are entitled to deference.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS**

**REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, **79 F.3D 1415 (5TH CIR. 1996).**

Signed this 18th day of August, 2006, at Lafayette, Louisiana.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE